UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-254 |
| | § | |
| SCHMIDT LAND SERVICES INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

Plaintiff BMO Harris Bank, N.A. (BHB) filed this action to recover on loans issued to Schmidt Land Services, Inc. (SLS) and allegedly guaranteed by Walker M. Schmidt (Schmidt), individually and Schmidt Oilfield Service Venture (SOSV) for the purchase of titled vehicles. D.E. 1, 6. The claims against SLS and Schmidt have been settled. The remaining parties to the original action, BHB and SOSV, have filed cross-motions for summary judgment. D.E. 60, 61. They both seek a determination as a matter of law whether the loan guaranties (Guaranties supported by Corporate Resolutions) signed by Schmidt on behalf of SOSV properly bind SOSV. For the reasons set out below, the Court DENIES BHB's motion for summary judgment (D.E. 60) and GRANTS SOSV's motion for partial summary judgment (D.E. 61).

**STANDARD OF REVIEW**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id*. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (*per curiam*) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (*per curiam*) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot

rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248.

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

It is well-settled that, "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). The issues in the cross-motions here are essentially identical: (a) whether SOSV executed an enforceable guaranty by virtue of Schmidt's actual authority; (b) whether SOSV executed an enforceable guaranty by virtue of Schmidt's apparent authority; (c) if the SOSV guarantee is not properly authorized on its face, whether BHB was required to, and did in fact, plead ratification; and (d) whether SOSV ratified the guarantee. For clarity of analysis, the Court will address the governing law and facts in evidence with respect to each issue in turn, concluding with an analysis of whether judgment as a matter of law may be entered based upon the parties' respective burdens of proof.

## DISCUSSION

BHB has recited, supported with evidence, the details by which its predecessor in interest (the Lender) loaned SLS funds to purchase heavy equipment and trucks (titled in the name of SLS) on several occasions. SOSV does not dispute any fact associated with the loan transactions: BHB's status as holder, dates, amounts, purpose, terms, default, current amount due, or interest, fees, and charges that have accrued and continue to accrue. The only matter in dispute is whether BHB may enforce the ostensible SOSV loan guaranty (Guaranty) executed on only Schmidt's signature as "managing member," supported by Corporate Resolutions also signed only by Schmidt as "managing member." D.E. 60-16, pp. 3, 6; D.E. 60-17.

### A. Agency Theories Regarding Schmidt's Ability to Bind SOSV

#### 1. Actual Authority—No Agency Established by Joint Venture Terms

The parties briefed several facets of agency authority in addressing whether Schmidt's signatures on the Guaranty and Corporate Resolutions bind SOSV. To avoid confusion between actual, express, implied, and apparent authority, the Court draws on the Fifth Circuit's recognition of Texas law sorting out the respective theories, as follows:

> The law of actual authority in Texas is well established. ***Actual*** authority includes both ***express*** and ***implied*** authority. ***Express*** authority exists "where the principal has made it clear to the agent that he wants the act under scrutiny to be done." ***Implied*** authority, however, exists "where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized; in other words, there is circumstantial proof of actual authority." Implied authority may arise in several ways: (1) from some indication from the principal that the agent possesses the authority;

(2) from being the necessary implication of an expressly authorized act; and (3) from a previous course of dealing.

*Pasant v. Jackson Nat. Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995) (citations omitted; emphasis added). Actual authority is distinguishable from apparent authority, addressed separately below.

### a. Actual-Express Authority

BHB claims that Schmidt represented to the Lender that he had express authority to bind SOSV and that he backed that up with purported Corporate Resolutions (D.E. 60-17). But that—the agent's representations to a third party—is not the inquiry the Court is to make, as outlined above. Rather, the question of express authority is whether the principal made the directive clear to the agent.

Schmidt makes no claim that SOSV expressly authorized him to make the purchases and incur the debts on which BHB seeks to recover. In fact, Schmidt has admitted the falsity of his representations to the Lender that he could properly sign the SOSV Guaranty and Corporate Resolutions. D.E. 63-1, pp. 6-8.

This admission of no express authority comports with the express terms of the Joint Venture Agreement (JVA). D.E. 60-20. Under those terms, Berry Contracting, LP d/b/a Bay, Ltd (Bay) was the sole managing party for SOSV, subject only to the directives of the executive committee. *Id.*, ¶ 5.1. While BHB suggests that Schmidt's position on the executive committee gave him express authority to act for SOSV, that argument fails to acknowledge the limitations on the executive committee.

First, the members of the executive committee were granted authority only to act for their respective participants on matters of interest to SOSV. JVA, D.E. 60-20, ¶ 4.3. Thus Schmidt was authorized to act for SLS "with respect to its participation in the joint venture." *Id*. This is not the equivalent of authority to act unilaterally for SOSV. Rather, the executive committee was to act only upon the mutual agreement of its members. *Id*., ¶ 4.4. Absent agreement, Bay and its representatives had dominant authority to proceed, with SLS having the right to object and initiate a dispute. *Id*.

Second, the executive committee's authority was limited and did not include the right of SLS or Schmidt to borrow against SOSV's or Bay's credit. "No Party or individual shall have authority to act for or bind to [sic] other Parties except in connection with the performance and administration of Land Services Contracts, and then only pursuant to authority delegated according to the provisions of this Section." *Id*., ¶ 5.4.

The description of the Land Services Contracts and the parties' respective duties connected with that work are set out in JVA Exhibit A. Bay, as managing party, had the responsibility to "Provide equipment, small tools and supplies, and other indirect support resources as needed to the project. Procure equipment through subcontracts as needed. Provide working capital as required by the joint venture through loans to be repaid as agreed to by the Committee." D.E. 60-20, p. 18. In contrast, SLS was to provide services and labor within the scope of the joint venture. It also provided information necessary for project bids. *Id*.

Nothing in the JVA expressly authorized Schmidt to purchase equipment in its own name with financing guaranteed by SOSV or otherwise incur debt on behalf of SOSV. BHB has not provided any other evidence to suggest that Bay or SOSV expressly authorized the Guaranties.

### b. Implied Authority

BHB contends that Schmidt's actions were consistent with the business contemplated by the JVA and that Bay, acting on behalf of SOSV, had knowledge of Schmidt's purchases and impliedly approved of them. Diane Decou, Chief Financial Officer for Bay, testified that SOSV was aware that Schmidt was taking out loans to purchase equipment to be used by SOSV. D.E. 60-22, p. 58.[1] She further stated that SOSV paid for the equipment's fuel, maintenance, operating labor, and interest on the loans, but not principal on the debt. *Id*. BHB argues that Barry Peterson was also aware of Schmidt's efforts to purchase equipment because Schmidt turned to Peterson to get SOSV financial information to supply to the Lender. D.E. 60-21, pp. 49-50.

Consistent with the *Pasant* rendition of the implied agency analysis under Texas law, this evidence must be viewed through the lens of (a) whether SOSV indicated to Schmidt or SLS that the Guaranty and Corporate Resolutions were permitted, (b) whether

---

[1] SOSV objected to the use of DeCou's deposition testimony under Federal Rule of Civil Procedure 32(a)(8). SOSV cites *Powertrain, Inc. v. Ma*, 640 F. App'x 263, 265 (5th Cir. 2016) (per curiam) for the proposition that the Fifth Circuit has found error in permitting the use of such deposition testimony outside of the parameters of Rule 32(a)(8) in hearings and trial. While the opinion does reference "hearings," that case and the two cases cited in support of that statement all involved the use of depositions at trial. When specifically addressing summary judgment procedure, the Fifth Circuit approved the use of any certified transcript of a judicial proceeding. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993). This Court further notes that SOSV has access to DeCou, who is an employee of Bay, the managing member of SOSV, and a friendly witness. *See generally*, D.E. 66-2. SOSV is in a position to controvert DeCou's testimony if need be, just as it would oppose affidavit testimony. SOSV's objection is OVERRULED.

those instruments were necessary for SLS to complete the work expressly delegated to it, and (c) whether supplying SOSV's guaranty of debt was consistent with the previous course of dealing between SOSV and SLS. This review of the evidence does not support a finding of implied agency.

**Indication from the Principal**. While SLS could procure equipment to be used or owned by SOSV, it could do so only with executive committee approval. "All material and equipment purchased or leased for the performance of the Project shall be procured by either party of the joint venture or by the joint venture itself as agreed to by the executive committee." JVA, D.E. 60-20, ¶ 2.6(b). If it were acquired, it had to be owned 50/50 by the parties to the JVA. SLS and Bay agreed that "interests in all property and equipment acquired and all money received in connection with the performance of the Land Services Contract shall be" fifty percent, each. *Id*., ¶ 3.1. This does not imply authorization for SLS to acquire 100% of equipment with SOSV's Guaranty of the purchase money debt without executive committee approval.

More consistent with DeCou's testimony, the SOSV executive committee was empowered to make joint decisions regarding "the rental rates or standard charges and terms for equipment owned by or services provided by any of the Parties and made available for use on this Project . . . ." *Id*., ¶ 4.5(c). SOSV's payment for the authorized use of equipment, however, does not equate with consent to a purchase of equipment using the credit of SOSV. Rather, SLS was free to make the purchase on its own, as both parties had the right "to carry on their individual businesses for their own benefit outside of the work contemplated hereunder." *Id*., ¶ 1.2. Nothing about SOSV's arrangements to

pay for the use of SLS-supplied equipment negates the limits on the purchase or financing of equipment in SOSV's name.

**Necessary Implication**. Likewise, nothing in the evidence demonstrates that SOSV intended that Schmidt be able to represent himself to be SOSV's managing party for signing the Guaranties, Corporate Resolutions, or any other such documents. Nothing in the evidence compels the implication that SOSV intended its payments for the use of the equipment to be treated as payments on purchase money debt. Nothing in SOSV's payments for the use of the equipment necessarily implied SOSV's Guaranty of SLS's purchase money debt. Rather, the JVA anticipated the use of equipment owned by its members and provided the appropriate manner for determining the terms on which that was to be accomplished, none of which included the guaranty of purchase money debt or the waiver of the joint governance of SOSV by its executive committee.

**Previous Course of Dealing**. Nothing in the evidence or briefing suggests that the parties had engaged in any course of dealing that would justify a conclusion that Schmidt regularly represented SOSV as a member authorized to incur debt on its behalf for the benefit of SLS.

### c. Summary Judgment Dismissing Actual Authority Theories

Under Texas substantive law, applied in this diversity case,[2] the burden of proof to show actual authority (express or implied) is upon BHB. *See*, *Burns v. Gonzalez*, 439 S.W.2d 128, 132 (Tex. Civ. App.—San Antonio 1969, writ ref'd n.r.e.). Thus BHB's

---

[2] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (courts apply substantive law of the forum state in diversity cases); *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (under Texas law, agency is not presumed and the party claiming agency has the burden of proof).

summary judgment burden, as movant, is to demonstrate that the evidence of Schmidt's actual authority is undisputed and that it is entitled to judgment as a matter of law on the Guaranties and Corporate Resolutions. Because there is ample controverting evidence that Schmidt did not have actual authority, BHB has not satisfied its summary judgment burden. BHB's motion for summary judgment, to the extent that it requires a finding that Schmidt had actual authority, is DENIED.

On the other hand, SOSV is entitled to summary judgment because its evidence that the JVA precluded actual authority is uncontroverted. The evidence upon which BHB relies is not competent on the issue of actual authority and it could not support a jury verdict in BHB's favor. The Court FINDS that, as a matter of law, Schmidt did not have actual authority (express or implied) to bind SOSV to the Guaranties and Corporate Resolutions and the Court GRANTS SOSV's motion for summary judgment in that regard.

### 2. Apparent Authority—No Agency Implied Through Partnership Status

In addition to theories of actual (express or implied) authority addressed above, a party may act pursuant to apparent authority. BHB suggests that Schmidt enjoyed the authority of an apparent agent by virtue of SLS's participation in the SOSV joint venture, tantamount to status as a partner conducting ordinary business for a general partnership. It further argues that it was not aware of any limitations on that apparent authority.

It is true, as BHB argues, that joint ventures are treated like partnerships in Texas law. Tex. Bus. Org. Code Ann. § 152.051(b) (defining partnership to include joint venture); *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988). Under partnership law,

"Each partner is an agent of the partnership for the purpose of its business." Tex. Bus. Org. Code Ann. § 152.301. Lest this agency be too broadly construed, the Code describes the partnership agency as circumscribed by (a) the limits as set out in the partnership agreement and known to the third party or (b) as the partnership business is actually or customarily conducted in the industry.

> (a) Unless a partner does not have authority to act for the partnership in a particular matter and the person with whom the partner is dealing knows that the partner lacks authority, an act of a partner, including the execution of an instrument in the partnership name, binds the partnership if the act is apparently for carrying on in the ordinary course:
>
> (1) the partnership business; or
>
> (2) business of the kind carried on by the partnership.

Tex. Bus. Orgs. Code Ann. § 152.302.

**Known Limits**. While acknowledging that the JVA may set out limits on joint venture authority, BHB relies on the requirement that it must know of the limits before they can be applied to BHB's detriment. § 152.302(a) (the "unless" clause). BHB contends that there is no evidence that it knew about the limiting terms of the JVA. Its representative affirmatively attested that the Lender did not receive a copy of the JVA prior to execution of the Guaranties. Affidavit of Micki Koepke, D.E. 60-3, p. 9, ¶ 36.

In contrast, Schmidt testified variously that he showed the Lender the JVA and described it to the Lender in the course of obtaining the loans or provided it to the Lender. D.E. 60-21, pp. 26-27, 53-54. Indeed, Schmidt is "99 percent sure, I showed it to them." *Id*., p.53. But he would not testify to personal knowledge that a hard copy or

electronic copy was provided for the Lender to keep.  *Id*., pp. 53-54.  "I know we had everything out on the table for everybody to see, but I don't know what got sent to who exactly."  *Id*., p. 54.  The evidentiary dispute over the extent of the Lender's knowledge of the terms of the JVA is one that the Court cannot resolve as a matter of law.

SOSV attempts to pierce through the quandary, arguing that BHB admitted that the Lender had a copy of the JVA when it made the loan because a copy was produced with its initial discovery responses as being a part of the original loan file.  However, BHB explained that one copy of the JVA in discovery was withdrawn by an amended discovery response when it became clear that notations on the copy showed that that particular copy was obtained much later—during separate litigation discovery—and could not possibly have been in the Lender's loan file prior to that litigation.  BHB seeks to withdraw a second copy of the JVA previously produced for the same reason.

Rather than pretermit the question, the production-in-discovery issue simply raises a new fact issue that cannot be determined at this juncture.  Whether the JVA was part of the original Lender's file prior to execution of the note depends upon a comparison of copies and an understanding of separate questions of authenticity and production and use in other litigation.  There has been no resolution of this question or the question whether, procedurally, BHB should be bound by its alleged production error—an issue that is driven by rules and practices in the Court and that is not necessarily designed to ferret out the underlying truth of the sequence of events when this loan was issued.

Regardless of how the Court treats the discovery issue, there is still admissible evidence on both sides of the question whether the JVA was a part of the Lender's file

prior to accepting the false SOSV Guaranties and whether the Lender knew of the contents of the JVA sufficient to understand the limits on Schmidt's authority. Therefore, the disputed issue of material fact persists. Assuming that BHB did not have knowledge of the JVA's limitations on Schmidt, the only potentially dispositive question regarding apparent agency is whether the SOSV Guaranties were outside the scope of SOSV's ordinary course of business from a third party perspective.

**Ordinary Business**. Section 152.302 is a codification of Texas law more than one hundred years old:

> Third persons dealing with a member of a firm in reference to partnership matters, in the absence of power expressly conferred, must recognize the fact that the partner's power to bind his firm is restricted to the doing of such things as are *within the scope of the particular business*. Between the partners themselves, and between the firm and persons dealing with it through a partner, there is no doubt that the *usages of firms engaged in the same character of business in the same country, as well as the general usage of the firm in the conduct of its business*, may be looked to to ascertain the implied powers possessed by a partner.

*Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751, 758 (Tex. 1976) (quoting *Randall v. Meredith*, 13 S.W. 576, 682 (Tex. 1890) (emphasis added)).

The purpose of the SOSV joint venture between SLS and Bay was described as "performing and completing Land Services Contracts" existing or to be awarded to them "and shall have no other purpose." JVA, D.E. 60-20, p. 1. BHB describes the nature of the business as "construction and trucking services for the oil and gas industry." D.E. 60-1, p. 15. If the question were whether it was consistent with that business for one participating company to furnish its heavy equipment to the venture in exchange for some

payment to compensate for the use of the equipment, then the answer would have to be affirmative. The JVA provides for just such a scenario and there is other evidence to corroborate it. However, that is not the question before the Court.

The question is whether it is in the ordinary course of that Land Service Contracts or construction and trucking business for the joint venture to supply a Guaranty to secure a participant's loan to purchase heavy equipment and vehicles titled exclusively in that participant's own name. Nothing in the JVA authorizes this (rather the JVA prohibits it) and no other evidence has been offered on this narrow issue.

The only relevant case law indicates that the apparent authority to bind a partnership to a negotiable instrument such as the loans at issue here exists only where the object of the business is based upon such financing. *Burns v. Gonzalez*, 439 S.W.2d at 132–33. As stated above, there is no evidence that the Land Services Contracts business of SOSV required SLS, the field participant, to purchase equipment in its own name using SOSV's guaranty.

While BHB makes reference to "the submittal of SOSV supporting financial documents that bolstered his apparent authority," (D.E. 62, p. 2), BHB fails to offer evidence of those documents or detail any reason that they demonstrate apparent authority. Certainly, as a participant in the joint venture, SLS has the right to SOSV's financial information and accounting. But BHB has not demonstrated how that access to information affects questions of authority to act on SOSV's behalf.

BHB also references Schmidt's testimony that "he regularly signed contracts on behalf of SOSV and bound SOSV to their terms." D.E. 62, p. 7 (citing D.E. 60-21, pp.

52-53). In looking at that testimony for details, the Court found none. The referenced testimony is just as conclusory as the statement describing it and fails to show that Schmidt had ever bound SOSV to anything like a loan guaranty before. This is reinforced by SOSV's briefing, which refers to clarifying testimony it elicited from Schmidt. D.E. 66, p. 5. That testimony shows that the other contracts Schmidt was referring to were master service agreements, formal bids, rights of entry, and "standard everyday stuff." D.E. 60-21, pp. 58-59. They were not for borrowing money. *Id*.

Again, under Texas substantive law, applied in this diversity case, the burden of proof at trial is on the party alleging apparent authority. *Erie, supra; Griego, supra*. As summary judgment movant, BHB has failed to supply any evidence that a financial transaction of the type it sues upon was within the ordinary business of SOSV or other companies in the same business. BHB's motion for summary judgment is DENIED on this issue. SOSV has challenged whether evidence supports this theory upon which BHB has the burden of proof. BHB, as non-movant, has wholly failed to supply any such evidence on its apparent authority theory. Furthermore, case law counsels against it. Therefore, SOSV's motion for summary judgment on this issue is GRANTED.

### B. Ratification

BHB also argues that SOSV knew about the loans and ratified them. SOSV argues that BHB waived this argument by failing to plead it. It further argues that, on the merits, the evidence does not support ratification. Assuming without deciding that BHB did not waive the argument, it is still a non-starter. As with the agency arguments, the decision is clear when the argument is properly focused.

"Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *Land Title Co. of Dallas v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). It is not knowledge of the transaction that triggers ratification, but knowledge of the otherwise wrongful act that was a part of the transaction that matters. *Id*.

In *Land Title*, the agent exceeded his authority by signing an unauthorized lien subordination agreement when selling the principal's realty. The fact that the principal accepted the down payment for the sale, demonstrating knowledge of the sale transaction, did not constitute ratification of the undisclosed improper subordination agreement that the agent used to induce the sale. *Id*. Ratification only occurred when the principal (1) gained full knowledge of the improper subordination agreement without which the sale would not have occurred and (2) retained the down payment he had received. *Id*. at 756-58.

Here, BHB relies on evidence that SOSV used the equipment SLS purchased and made payments for that use, which included interest payments on the loans. This is evidence that SOSV was aware of SLS's purchase of the equipment, financed through the Lender. However, it is not evidence that SOSV knew that Schmidt had executed the unauthorized Guaranties and Corporate Resolutions to induce the financing.

BHB has not directed the Court to any evidence that, after learning of the Guaranties, SOSV continued to accept the benefits of SLS's equipment purchases. BHB takes no discernable position on when SOSV learned of the Guaranties. In contrast,

SOSV offers the affidavit of DeCou, stating that SOSV did not learn anything about the improper Guaranties until Bay, as managing member of the joint venture, was served with this action in 2016. D.E. 7; D.E. 66, p. 11 n.1; D.E. 66-2.

According to the JVA, its term expired on the later date of (a) 12 months after execution of the JVA or (b) upon completion of the Land Services Contracts listed on Exhibit A or any additional contracts with existing accounts. JVA, D.E. 60-2, ¶ 2.5(a). The JVA was executed on April 28, 2010. DeCou testified that the relationship between Schmidt, SLS, SOSV, and Bay had effectively ended in December of 2013. D.E. 60-22, pp. 79, 97. It was at that time that Schmidt served SOSV with a different lawsuit. *Id*. at 79.

By August 17, 2015, SLS was a Chapter 11 Debtor in bankruptcy and the Lender had obtained the Bankruptcy Court's permission to repossess the equipment. D.E. 60-18. According to the record before the Court, any relevant business of SOSV had certainly terminated by that date in 2015, if not much sooner—well prior to the date SOSV learned of the Guaranties and Corporate Resolutions. At any rate, BHB has failed to demonstrate that SOSV accepted any benefit of its financing after notice of this action in 2016. Thus there is no evidence to create a disputed issue of material fact regarding ratification—that SOSV retained the benefits of the Guaranties after gaining full knowledge of them.

"Where ratification is relied upon to establish a principal's liability for the unauthorized act of his agent, the burden of proof is on the party who asserts ratification." *A.B.F. Freight Sys., Inc. v. Austrian Imp. Serv., Inc*., 798 S.W.2d 606, 610 (Tex. App.—Dallas 1990, writ denied). BHB has failed to demonstrate that there is evidence to

support ratification and eliminate any disputed issue of fact in that regard. BHB's motion is DENIED as to ratification. Because the burden of proof lies with BHB, SOSV's motion is GRANTED on the basis of a lack of evidence that SOSV accepted any benefits of the loan transaction with knowledge that Schmidt's unauthorized signature on behalf of SOSV appeared on Guaranties or Corporate Resolutions.

## CONCLUSION

For the reasons set out above, the Court DENIES BHB's motion for summary judgment (D.E. 60). The Court further GRANTS SOSV's motion for partial summary judgment (D.E. 61) in its entirety and DISMISSES all claims BHB has alleged against SOSV.

ORDERED this 27th day of September, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE